**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| John W. Farmer, | ) | No. CV 09-2543-PHX-RCB (MEA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Dana Youhas, et al., | ) | |
| Defendants. | ) | |

Plaintiff John W. Farmer filed this civil rights action under 42 U.S.C. § 1983 against Officer Dana Youhas, of Maricopa County Adult Probation, and Officer #2381, of the Phoenix Police Department. (Doc. 13.) Defendant Youhas moves for summary judgment on the claims against her.[1] (Doc. 54.)

The Court will grant the motion and dismiss the claims and Defendant Youhas.

**I.  Background**

In Count I of his Second Amended Complaint, Plaintiff alleged that Youhas violated Plaintiff's Fifth Amendment right against self-incrimination when she stated that his probation would be revoked if he refused to answer questions during a polygraph. (Doc. 13.)

---

[1]The Court provided the required notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), and permitted Plaintiff time to supplement his response. (Docs. 56, 58, 59.)

In Count II, Plaintiff alleged that Youhas and Officer #2381[2] were deliberately indifferent to Plaintiff's serious medical condition when Youhas forced Plaintiff to walk without crutches and a knee brace. Plaintiff also asserted that Officer #2381 took Plaintiff's crutches and forced him to walk unassisted approximately 50 feet to his patrol car and when Plaintiff arrived at the jail informed him that no wheelchair was available and made Plaintiff walk another 60 feet.[3]

## II. Summary Judgment Legal Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Rule 56(c) mandates the entry of summary judgment against

---

[2]Officer #2381 has not been served.

[3]On Screening, the Court dismissed other Defendants and claims. (Doc. 13.) The Court subsequently dismissed additional Defendants and claims. (Doc. 25.)

a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

**III.    Counts I and II**

    **A.    Count I**

        **1.    Legal Standard**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that the Amendment protects the individual against being involuntarily called as a witness against himself in a criminal prosecution and also protects him from answering "official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

One does not lose the protection of the Fifth Amendment by reason of a criminal conviction. Minn. v. Murphy, 465 U.S. 420, 426 (1984). "[A] district court may require, as a term of supervised release, that a defendant submit to polygraph testing . . . but a defendant retains his Fifth Amendment rights during any such testing." United States v. Weber, 451 F.3d 553, 568 n. 17 (9th Cir. 2006) (citing United States v. Antelope, 395 F.3d 1128, 1134–41 (9th Cir.2005). ) Thus, a probationer can be required to appear and discuss matters relating to his probationary status; "such a requirement, without more, does not give

rise to a self-executing privilege." Murphy, 465 U.S. at 435. But "the result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution." Id. at 435. There is no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings. Id. at 435, n 7.

To establish a Fifth Amendment claim, a plaintiff must prove that: (1) the testimony desired by the government carried the risk of incrimination and (2) the penalty he suffered amounted to compulsion. Antelope, 395 F.3d at 1134–41. As to compulsion, "if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Murphy, 465 U.S. at 435.

In addition, to maintain a civil rights claim based on an alleged violation of the Fifth Amendment, an incriminating statement must be used against an individual in a criminal proceeding. Chavez v. Martinez, 538 U.S. 760 (2003).

### 2. Parties' Contentions

#### a. Defendant[4]

Plaintiff is a registered sex offender on lifetime probation for child molestations committed in 1997 and 1998. (Doc. 55, DSOF ¶ 1.) As a condition of his probation, Plaintiff is required to submit to polygraph examinations on an annual basis and as requested by his probation officer. (Id. ¶ 2.) During the annual polygraph examinations, Plaintiff is regularly asked if he has accessed pornography, including child pornography, or if he has had inappropriate behavior with children. (Id. ¶ 3.) Plaintiff's probation can be revoked for failing his annual test or for refusing to take a test required by his probation officer. (Id. ¶ 4.)

---

[4]In support of her motion, Defendant submits her Statement of Facts (Doc. 55 (DSOF)) with exhibits, including excerpts from Plaintiff's deposition (id., Ex. A, Pl.'s Dep. Mar. 24, 2011); Defendant's declaration (id., Ex. B, Youhas Decl.); discovery documents (id., Ex. C); and polygraph results (id., Ex. D, E).

- 4 -

Accessing pornography is also a violation of his probation terms. (Id. ¶ 5.)

Plaintiff was released from the Arizona Department of Corrections in 2007 and was self-committed to the Arizona Community Protection & Treatment Center (ACPTC) for a lifetime term. (Id. ¶ 8.)

In September of 2007, Defendant was assigned as Plaintiff's probation officer. (Id. ¶ 11.) In 2009, pornographic material was found on an ACPTC resident's computer. (Id. ¶ 16.) Plaintiff took two polygraphs thereafter; one was required by ACPTC and was therapeutic in nature, and the second, which is at issue here, was required by Defendant after Plaintiff failed the first exam. (Id. ¶¶ 17, 18.) Defendant asserts that, after the computers were first searched, Plaintiff requested to be given a polygraph test because he was being accused of downloading the pornography. (Id. ¶ 20.) Plaintiff failed the first polygraph because of the questions concerning whether he downloaded the pornography. (Id. ¶ 21.)

Defendant maintains that the second polygraph was administered only for the purpose of complying with probation conditions; specifically, Defendant required the second polygraph exam to follow up on the first failed test. (Id. ¶¶ 22, 23.) There were no charges pending against Plaintiff at the time and no threat of a separate charge or crime. (Id. ¶ 24.)

Defendant asserts that Plaintiff was not and has not been charged with a crime in connection with the discovery of pornographic material on another resident's computer. (Id. ¶ 26.) And at the time he received the directive to take the second exam, Plaintiff knew that no charges were going to be brought against him. (Id. ¶ 27.) Defendant asserts that despite this belief, Plaintiff was advised not to take the second polygraph, even though he knew his probation could be revoked for refusing. (Id. ¶ 28.)

Defendant also asserts that when Plaintiff was notified of the second polygraph exam, his "general attitude . . . was pretty hostile" because he felt there was nothing to file charges on and there were no charges pending, so the exam was merely a pretext to revoke his probation. (Id. ¶ 29.) Though he understood no charges would come from the pornography incident, Plaintiff still considered invoking his Fifth Amendment rights, which he communicated to Defendant, but "[he] did not say that [he] was" going to invoke the Fifth.

1  (Id. ¶ 31.)

2  Defendant contends that Plaintiff took the second polygraph under threat of a
3  probation violation if he refused. (Id. ¶ 32.) He understood that he was required to submit
4  to polygraphs as a term of his probation, and Defendant informed Plaintiff if he refused to
5  take the polygraph he would be in violation of his probation. (Id. ¶ 33.) Defendant asserts
6  that Plaintiff never invoked his Fifth Amendment rights; he told Defendant merely that he
7  was considering pleading the Fifth. (Id. ¶¶ 34, 35.) Plaintiff's probation was revoked only
8  for failing a polygraph exam and for viewing sexual material. (Id. ¶ 36.) No criminal
9  charges have been filed; there have been no consequences from the polygraph other than
10  probation revocation. (Id. ¶¶ 37, 38.) Plaintiff was arrested for a probation violation on
11  September 9, 2009 for failing the second polygraph examination. (Id. ¶ 41.)

12  Defendant argues that Plaintiff never invoked his Fifth Amendment rights and that
13  because he was not asked questions that could incriminate him on new criminal charges, he
14  had no right to invoke the privilege. (Doc. 54 at 7-9.) Defendant also argues that Plaintiff
15  has no §1983 claim because no statements that he made at the polygraph were ever used
16  against him in a criminal proceeding. (Id. at 10, citing Chavez, 538 U.S. at 767.)

### b.    Plaintiff[5]

18  Plaintiff asserts that although he committed himself to ACPTC, he is not there for a
19  lifetime and each year has the option of going to court to request a full discharge or a
20  modification of his Least Restrictive Alternative status. (Doc. 56 at 1.) He is not required
21  to take an annual polygraph; rather, he must submit to psychological or physiological
22  assessment at the direction of probation. (Id. at 2; ref. Doc. , Ex. B.) He takes a polygraph
23  every year as well as a plethysmograph; he argues that there is no requirement that he pass
24  a polygraph. (Id. at 2.)

25  When pornography was discovered on an ACPTC resident's computer in March 2009,
26  Plaintiff requested a polygraph when he met with his primary therapist. This polygraph was

---

[5]In opposition Plaintiff submits his response (Doc. 56), with exhibits, his supplemental response (Doc. 59), and Statement of Facts (Doc. 60 (PSOF)).

therapeutic and used only for treatment purposes. Plaintiff notes that no pornography was found on his file in that computer. (Id.)

Plaintiff asserts that Defendant waited over five months to request the second polygraph and that although he was told that no charges were pending, if an investigation was still in progress, Plaintiff would likely not have been told. (Id. at 3.)

Plaintiff alleges that e-mails between Defendant and Plaintiff's attorney on another matter show that in late July through mid-August there was an issue that Plaintiff could be "exposed to serious criminal liability." (Id.) Plaintiff asserts that the second polygraph was an attempt to discover incriminating evidence as shown by Defendant's statement that "they are required to remain crime free while on probation, and if they do not, it is a violation." (Id. at 3-4, Ex. B.)

Plaintiff repeats these assertions in his supplemental response. (Doc. 59 at 1-3.) He argues that he was at risk with the second polygraph due to the nature of the images and that the questions that could have been and were asked carried the possibility of future criminal prosecution. (Id. at 5.)

### c. Reply

In her reply, Defendant argues that the Fifth Amendment only protects individuals from being compelled to answer specific questions that carry the risk of incrimination and that no question asked of Plaintiff during the polygraph exam carried the risk of incrimination in a criminal proceeding. (Doc. 57 at 2-3, citing Garner v. United States, 424 U.S. 648, 654-55 (1976).) She notes that Plaintiff's own response concedes that "plaintiff *did not know* if there would be any questions regarding the incident he would be questioned about, or if the questions would be related to the suspected child pornography." She argues that the Fifth Amendment offers no protection until an incriminating question is actually asked and the Fifth Amendment is actually invoked. (Id. at 3, citing Garner, 424 U.S. 654-55.

Defendant also argues that her e-mail exchange with plaintiff's attorney for another issue does not establish Fifth Amendment rights when no incriminating questions were

1 asked. (Id.) Plaintiff would still only be able to invoke the Fifth Amendment in response to
2 individual questions, which he did not do, and not as a blanket protection from having to take
3 a polygraph exam. Defendant contends that although Plaintiff asserts that he was placed in
4 a "classic penalty situation," the questions asked of him were relevant only to his status on
5 probation, which the Supreme Court specifically stated would not be deemed a penalty
6 situation nor would answers be deemed compelled. (Id. at 4, citing Murphy, 465 U.S. at 426
7 n.7.) Defendant asserts that Plaintiff's probation was not revoked for refusing to answer the
8 polygraph or for his substantive answers but for failing the polygraph exam. Id. at 4 n.4.

9 Defendant also argues that to the extent that Plaintiff attempts to set forth separate
10 Fourteenth Amendment claims (Doc. 56 at 7-8), these claims are redundant and subsumed
11 by the specific Fifth Amendment and Eighth Amendment claims. (Doc. 57 at 7.)

### 3. Analysis

13 The Court will grant Defendant summary judgment on Count I. Because it is
14 undisputed that the testimony given at the second polygraph was never used in a criminal
15 proceeding, the Court need not consider whether Plaintiff can show that: (1) the testimony
16 desired by the government carried the risk of incrimination and (2) the penalty he suffered
17 amounted to compulsion. Plaintiff has no § 1983 claim.

18 In Chavez, the Supreme Court held in a plurality opinion that for purposes of a claim
19 under 42 U.S.C. § 1983 based on an alleged violation of the Fifth Amendment, there is no
20 harm until an incriminating statement is used against an individual in a criminal proceeding.
21 538 U.S. 760. In Chavez, six Justices found that the civil rights action based on an alleged
22 violation of the Fifth Amendment could not survive because the plaintiff had never been
23 charged with any crime. Id. at 766-67 (Thomas, J., joined by Rehnquist, C.J., O'Connor, J.,
24 and Scalia, J.), id., at 777-79 (Souter, J., concurring, joined by Breyer, J.).

25 Since Chavez, the Ninth Circuit has considered the meaning of "use" of a statement
26 in a "criminal proceeding." See Stoot v. City of Everett, 582 F.3d 910, 922-25 (9th Cir.
27 2009). In Stoot, the court held that held that a coerced statement has been used in a criminal
28 case when it has been relied on to file formal charges, to determine judicially that the

prosecution may proceed, and to determine pretrial custody. Id. at 925. See also Crowe v. County of San Diego, 608 F.3d 406, 429 (9th Cir. 2010) (statements obtained in violation of the Fifth Amendment and used at various pretrial criminal proceedings, including the grand jury, gave rise to a Fifth Amendment claim).

Plaintiff's responses make no argument regarding Chavez and the lack of a criminal proceeding in Plaintiff's case; he addresses only the two elements of a Fifth Amendment claim. It is well-settled that a probation revocation proceeding is not a criminal proceeding. Murphy, 465 U.S. at 435 n. 7, citing Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973). It is undisputed that the only use of Plaintiff's statements from the polygraph was in the probation revocation. Moreover, Plaintiff's probation was not revoked for invoking his Fifth Amendment privilege. Therefore, even if the questions asked carried the risk of incrimination and Plaintiff was compelled to answer them, Plaintiff has no civil rights claim regarding any alleged Fifth Amendment violation.

Plaintiff did not assert a separate due process claim in his Second Amended Complaint, and the Court will not consider it now. See Chavez, 538 U.S. at 779-80.

Count I will be dismissed.

**B.     Count II**

**1.     Legal Standard**

To prevail on a medical claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate

indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.

### 2. Parties' Contentions

#### a. Defendant

On August 29, 2009, Plaintiff had surgery on his left knee. (Doc. 55, DSOF ¶ 40, Ex. A, Pl.'s Dep. 65.) He was arrested for a probation violation on September 9, 2009 for failing the second polygraph examination. (DSOF ¶ 41.) He was taken to the ACPTC visitation area where Defendant, Angel Williams, approximately 13 ACPTC staffers and security personnel, and 2 Phoenix police officers were waiting. (Id. ¶ 42, Pl.'s Dep. 67.) Plaintiff was on crutches, using a knee immobilizer with steel bands to prevent his knee from moving and causing pain. (DSOF ¶ 43.).

One of the Phoenix police officers informed Plaintiff that he could not keep his crutches. (Id. ¶ 44, Pl.'s Dep. 68.) Plaintiff then told Defendant that he at least needed the knee brace; Defendant did not respond. (DSOF ¶ 45, Pl.'s Dep. 68.) Plaintiff then told the Phoenix police officers that he needed either the crutches or the brace to walk, but the Phoenix police officers told him that metal could not be taken into the jail. (DSOF ¶ 46, Pl.'s Dep. 68-69.) Phoenix police officers then escorted Plaintiff to the police car. (DSOF ¶ 47, Pl.'s Dep. 69.) Defendant was not involved in transporting plaintiff; rather, she was an observer. (DSOF ¶ 48, Pl.'s Dep. 69-70, 73, 75.)

Plaintiff was allowed to take his time going to the police car. (DSOF ¶ 49, Pl.'s Dep. 70.) He refused to ask the police officers for help because he was upset with them. (DSOF ¶ 50, Pl.'s Dep. 76.)

Plaintiff was taken to the Fourth Avenue Jail where Defendant was positioned outside of the police car while a Phoenix police officer went inside to check for a wheelchair. (DSOF ¶¶ 51-52, Pl.'s Dep. 71.) There were no wheelchairs available, so Phoenix police officers helped Plaintiff into the jail. (DSOF ¶ 53, Pl.'s Dep. 71.) Plaintiff had no conversation with Defendant at the Fourth Avenue Jail. (DSOF ¶ 54, Pl.'s Dep. 72.)

- 10 -

Plaintiff testified that no medical doctor has treated him since this incident or informed him that the conditions in his complaint caused or contributed to his current pain. (DSOF ¶ 55, Pl.'s Dep 82.)

Defendant argues that Plaintiff fails to show that he suffered an objectively sufficiently serious harm. (Doc. 54 at 12 (citing <u>Duarte v. Gill</u>, 359 Fed. App'x 883, 884 (9th Cir. 2009).) She asserts that there are no facts to show that Plaintiff ever notified her that he would suffer serious injury by walking 50 feet without crutches or a brace and he offers no evidence that he was injured as a result of the claimed violation. (<u>Id.</u> at 14.) There were legitimate safety concerns in requiring Plaintiff to relinquish his brace and crutches. (<u>Id.</u> at 15.) Defendant contends that her mere presence at the scene is insufficient for liability and as a probation officer, she had no duty to ensure Plaintiff's well-being when he was in custody of law enforcement officials. (<u>Id.</u>) Plaintiff's deposition testimony shows that it was the Phoenix Police Department officers who required Plaintiff to give up the knee brace and crutches. (<u>Id.</u> at 16.)

Defendant also argues that Plaintiff has no separate Fourteenth Amendment claims. (<u>Id.</u> at 16). She also asserts qualified immunity. (<u>Id.</u> at 17.)

### b. Plaintiff

Plaintiff asserts that the case notes maintained by Defendant show how long Plaintiff needed to wear the knee brace on his left knee and that he was due to have surgery on his right knee. (Doc. 56 at 6, Ex. C.) Plaintiff claims that in her responses to discovery, Defendant asserted that she told the officer that Plaintiff needed the leg brace. (<u>Id.</u>) Plaintiff argues that Defendant knew that Plaintiff would be harmed if made to walk without crutches or a knee brace. (<u>Id.</u>) Defendant knew Plaintiff was still suffering pain from the surgery and the pain he suffered was due to Defendant's inaction. (<u>Id.</u> at 7.) Defendant is listed on jail records as the arresting officer. (<u>Id.</u>)

Plaintiff repeats these arguments in his supplemental response. He argues that Defendant's prior knowledge of Plaintiff's knee injury and how long he would need the knee brace demonstrates deliberate indifference. (Doc. 59 at 8.) Plaintiff asserts that the record

shows interference with prescribed treatment. (Id.)

### c. Reply

Defendant argues that Plaintiff fails to offer any medical evidence in support of his Eighth Amendment claim. (Doc. 57 at 5.) Plaintiff has no direct evidence such as a prescription, affidavit from his doctor, or even a case note from Defendant that the brace and crutches were required after surgery. Defendant contends that Plaintiff submitted a doctor's note which states that Plaintiff will need surgery and "he cannot stand or walk on it for extended periods." (Id., ref. Doc. 56, Ex. C, case note entry dated 10/30/08.) Defendant argues that if that is correct, she would have been acting in compliance with doctor's orders by permitting plaintiff to walk the short distances he describes. (Id. at 5.)

Defendant argues that Plaintiff is attempting to create liability simply for creating an alleged risk of harm, even if no harm occurs and that this is an incorrect standard. (Id. at 6.)

Defendant further argues that she has not offered contradictory responses; her declaration notes that she did not speak to *Plaintiff* at the time he was being taken into custody and her interrogatory responses indicate that she believes she did speak to the *arresting officers from the Phoenix Police Department*. She contends that her interrogatory answer strongly supports her defense that no Eighth Amendment claim exists as the plaintiff must prove "that the official . . . failed to act," and her statement to Phoenix Police shows that she acted to prevent harm from befalling the plaintiff. (Id., citing Farmer, 511 U.S. at 842.) Because Plaintiff was in the custody of the Phoenix Police Department, Defendant could not have done more. Defendant also asserts that the fact that she was listed as an arresting officer is insufficient to support an Eighth Amendment claim because at no point was she more than an observer when plaintiff was taken into custody. (Id. at 7.)

### 3. Analysis

The Court will grant Defendant summary judgment on Count II. Plaintiff fails to create a triable issue of fact as to the objective seriousness of the risk or Defendant's awareness of such a risk. Moreover, the record shows that it was not Defendant who

- 12 -

1  required Plaintiff to relinquish the knee brace or crutches; rather it was officers of the
2  Phoenix Police Department.

3  Plaintiff's only evidence of a serious risk is his own claim that he could not walk
4  without knee brace or crutches. Plaintiff presents no medical evidence, such as an affidavit
5  or directive from a doctor. While Plaintiff wore the knee brace and used the crutches after
6  surgery, the issue is whether there was a substantial risk of serious harm from walking a short
7  distance without them. The only evidence in Defendant's case notes indicates that following
8  a 2008 knee surgery, Plaintiff could not stand or walk for extended periods. ( Doc. 56, Ex.
9  C, case note entry dated 10/30/08.) This is insufficient evidence to demonstrate that a
10 substantial risk of serious harm existed from walking 40 or 50 feet to the patrol car and 60
11 feet from the car to the jail and insufficient evidence from which Defendant could draw an
12 inference of a substantial risk of serious harm. See Duarte, 359 Fed. App'x at 884 (finding
13 insufficient evidence of a substantial risk of serious harm or that prison officials were
14 deliberately indifferent when they required the plaintiff to walk relatively short distances on
15 his broken foot). In addition, Plaintiff testified that he did not ask the Police Department
16 officers for assistance in getting to the patrol car because he was upset with them; the Court
17 finds such behavior is inconsistent with Plaintiff's claim of a substantial risk of serious harm.
18 In sum, there is insufficient evidence of a substantial risk of serious harm or evidence from
19 which Defendant could have drawn the inference of such a risk. Plaintiff fails to demonstrate
20 a triable issue of fact that Defendant was deliberately indifferent to a serious medical need.
21 See Jett, 439 F.3d at 1096.

22 Moreover, it is undisputed that it was the Phoenix Police officers, not Defendant, a
23 County probation officer, who ordered Plaintiff to relinquish his crutches. To prevail on a
24 claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result
25 of specific conduct of a defendant and show an affirmative link between the injury and the
26 conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Plaintiff
27 offers no evidence to show that Defendant asked or suggested to the police officers that the
28 knee brace and crutches be taken away or evidence to show that she could have required the

Phoenix Police Department to restore them. The Court rejects Plaintiff's claim that because Defendant may have been listed on a report as the arresting officer she had any authority regarding the Police Department procedures.

The Court need not consider Defendant's remaining arguments.

The Court also agrees with Defendant that Plaintiff did not raise a separate due process claim there are no separate Fourteenth Amendment claims.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn for Defendant Youhas's Motion for Summary Judgment (Doc. 54).

(2) Defendant's Motion for Summary Judgment (Doc. 54) is **granted**; the claim in Count I is dismissed and the claim in Count II is dismissed as to Defendant Youhas.

(3) Defendant Youhas is **dismissed**.

(4) The remaining claim is Count II against Officer #2381. As he had not yet been served, the Magistrate Judge shall issue an Order to Show Cause to Plaintiff to show why the claim against Officer #2381should not be dismissed.

DATED this 7th day of February, 2012.

_____
Robert C. Broomfield
Senior United States District Judge